UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
PIKEVILLE

| | |
|---|---|
| P & J RESOURCES, INC., ) | |
| ) | |
| Plaintiff, ) | Civil Action No. 09-95-ART |
| ) | |
| v. ) | |
| ) | **MEMORANDUM OPINION** |
| SUPERIOR WELL SERVICES, INC., ) | **AND ORDER** |
| ) | |
| Defendant. ) | |

\*\*\* \*\*\* \*\*\* \*\*\*

On January 18, 2010, the defendant, Superior Well Services, Inc. ("Superior"), filed a motion for summary judgment, R. 20, to which the plaintiff, P & J Resources ("P & J") responded, R. 25, and the defendant replied, R. 27. The defendant also filed a separate statement of undisputed material facts, R. 21, to which the plaintiff responded, R. 26, and the defendant replied, R. 27, Ex. 1. This motion is now ripe for the Court's review.

### BACKGROUND

Superior and P & J have a longstanding business relationship. Superior is a Pennsylvania-based oilfield services company that provides well-site solutions to oil and gas companies, including pumping service and cementing. R. 20, Ex. A. P & J is a Kentucky oil and gas company, owned by Pamela Williams since 1994. R. 20, Ex. D, Pamela Williams Deposition ("P. Williams Dep.") at 4. Pamela is the President of P & J, and her husband, Richard Williams, is the Vice President of Operations. *Id.* at 4-5; R. 20, Ex. C, Richard Williams Deposition ("R. Williams Dep.") at 5. Beginning in at least 2004, Superior provided P & J with well services and

products. P. Williams Dep. at 17. There was no ongoing agreement between Superior and P & J for the work performed. R. Williams Dep. at 6; P. Williams Dep. at 38-39. P & J would call Superior when it needed a well logged. R. Williams Dep. at 8-9. Someone at P & J—either Richard Williams, Garry Williams, Louis Patrick, or others—would take Superior out to the well site. *Id.* at 10. After Superior logged the well, a Superior employee filled out an invoice. *Id.* at 18-19. A P & J employee then signed the invoice and paid the invoice price to the Superior employee on site. *Id.*

The parties used the same form invoice throughout their relationship. On the front of the invoice, next to one of two places for a signature, the invoice reads: "I have read, understood and agreed to the terms and conditions printed on the reverse side hereof which include, but are not limited to, LIMITED WARRANTY, INDEMNITY, RELEASE AND PAYMENT and represent that I have full power and authority to execute this agreement." *See* R. 20, Exs. G, H, I, J, and K. The final term on the back of the invoice is a forum-selection clause that states:

> (16) The terms and conditions of this agreement shall be interpreted and construed in accordance with the law of the Commonwealth of Pennsylvania and *any litigation arising from this agreement or the provision of product by Superior to customer shall be filed and tried in the Court of Common Pleas of Indiana County, Pennsylvania* and in no other jurisdiction.

*See id.* (emphasis added).

On September 6, 2006, Superior logged three gas wells for P & J in Magoffin County, Kentucky. R. 1, Ex. 3 ¶ 3. Louis Patrick, a P & J employee, signed the invoices for these transactions. R. 20, Exs. G, H, I. Patrick has worked for P & J for the past ten to twelve years, as a laborer reading gas meters. R. 20, Ex. F, Louis Patrick Deposition ("Patrick Dep.") at 7.

2

In 2009, P & J discovered that two of those wells were logged inaccurately. R. 1, Ex. 3 ¶¶ 4-5. On April 6, 2009, Superior logged those two wells again and confirmed that its 2006 logging was incorrect. *Id.* ¶ 6. P & J alleges that one of the wells cannot produce gas due to the inaccuracy of Superior's logging in 2006, and on June 25, 2009, it brought an action against Superior in Magoffin County Circuit Court. *See* R. 1. P & J sought to recover lost profits for the well, along with the $300,000 it spent to drill the well. R. 1, Ex. 3 ¶ 8.

On July 15, 2009, Superior removed the case to this Court. *See* R. 1. Superior then filed a motion to dismiss the case because the parties purportedly agreed under the forum-selection clause in the invoices that any litigation related to the logging services would be brought in Pennsylvania state court. R. 7. Because both parties cited extrinsic evidence in support of their arguments, the Court dismissed the motion and allowed the parties three months to take limited discovery on the factual issues surrounding the forum-selection clause. R. 15. After that time elapsed, Superior filed its current summary judgment motion. R. 20.

## DISCUSSION

Superior's motion for summary judgment addresses only the forum-selection clause issue. A summary judgment motion is a proper mechanism for dismissal based on a forum-selection clause. *See General Electric Co. v. G. Siempelkamp GmbH & Co.,* 29 F.3d 1095, 1097 (6th Cir. 1994). Summary judgment is proper if "there is no genuine issue as to any material fact [such that] the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).

The forum-selection clause on the P & J/Superior invoice binds the two parties to litigate in Indiana, Pennsylvania. *See* R. 20, Ex. G. Forum-selection clauses are "prima facie valid and

should be enforced unless enforcement is shown by the resisting party to be 'unreasonable' under the circumstances." *Security Watch, Inc. v. Sentinel Sys., Inc.*, 176 F.3d 369, 375 (6th Cir. 1999) (quoting *M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 10 (1972)).

P & J raises two arguments as to why the Court should not enforce the forum-selection clause: (1) Patrick, the signator, lacked authority to bind P & J to the contract, R. 25 at 2, and (2) P & J cannot afford to litigate in Pennsylvania, *id.* at 4. Since neither of these arguments have merit and no material issues of fact exist, the forum-selection clause is enforceable.

**I.      Contract Validity**

P & J states that Patrick lacked authority to sign the invoice on P & J's behalf. *Id.* at 2. In doing so, P & J argues indirectly that the contract is invalid.

The invoice is the entire contract between P & J and Superior. The payment was consideration for the work performed, and a signed invoice memorialized the exchange. Neither party contests that the invoice, if signed with appropriate authority, validly represents the agreement between the parties. P & J does not argue that it did not know about the forum-selection clause, or that Superior unfairly attempts to bind P & J to an adhesion contract.

P & J does not raise any threshold issues about the validity of forum-selection clauses generally. The Supreme Court approved forum-selection clauses as part of form terms and conditions, so long as they are scrutinized for fundamental fairness. *See Carnival Cruise Lines v. Shute*, 499 U.S. 585, 595 (1991). Further, the face of the invoice in this case states that the person signing it understands that he has the authority to execute the agreement, including the terms and conditions on the back. R. 20, Ex. G.

**A. Choice of Law**

The invoices in this case also include a choice of law provision. *See* R. 20, Exs. G, H, I, J, and K. So, before addressing the merits of Superior's motion, the Court must determine whether Pennsylvania's or Kentucky's law applies. To do so, a federal district court sitting in diversity looks to the conflict of law rules prevailing in the state in which the court sits. *Williams v. Toys 'R' Us*, 138 F. App'x 798, 803 (6th Cir. 2005) (citing *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941)). But the Court only needs to analyze choice of law when there is an actual conflict between the laws of the two states. *See id.* ("Because there is no conflict of laws (indeed this is a false conflict situation), we therefore conclude that the district court did not err in applying Michigan state law in this case."). Regarding the standard agency and contract law that applies here, Pennsylvania and Kentucky courts are aligned. *Compare Joyner v. Harleysville Ins. Co.*, 574 A.2d 664, 667 (Pa. Super. Ct. 1990) ("Apparent authority exists where a principal, by words or conduct, leads people with whom the alleged agent deals to believe that the principal has granted the agent the authority he or she purports to exercise.") *with Mill Street Church of Christ v. Hogan*, 785 S.W.2d 263, 267 (Ky. Ct. App. 1990) ("Agency cannot be proven by a mere statement, but it can be established by circumstantial evidence including the acts and conduct of the parties such as the continuous course of conduct of the parties covering a number of successive transactions."). The result would be the same when applying either Pennsylvania or Kentucky law; for convenience, the Court applies Kentucky law.[1]

---

[1] If a conflict did exist, Kentucky law would still apply. Kentucky has long applied the most significant relationship rule to decide conflict of law issues. "'The rights and duties of the parties with respect to an issue in contract are determined by the local law of the state which, with

**B. Authority to Contract**

P & J argues that its employee, Patrick, lacked the authority to sign the invoices on P & J's behalf. R. 25. It cites only Patrick's deposition as evidence, and fails to point to any law to support its argument. The person alleging agency and resulting authority—Superior—has the burden of proving that it exists. *Hogan*, 785 S.W.2d at 267 (citations omitted). Superior has met its burden, and P & J is incorrect. Patrick had apparent authority to bind P & J to the invoices. Under the doctrine of apparent authority, an agent does not need explicit permission to carry out an act for its principal. As P & J's employee, Patrick is an agent of the corporation. "Apparent authority . . . is the authority the agent is held out by the principal as possessing. It is a matter of appearances on which third parties come to rely." *Id.* (citation omitted); *see also Paintsville Hosp. Co. v. Rose*, 683 S.W.2d 255, 256-57 (Ky. 1985). No one at P & J ever gave Louis Patrick explicit authority to sign contracts on its behalf. Patrick Dep. at 20-21.

Even without direct instructions, Patrick could still possess apparent authority. "It matters not that the agent acts contrary to the instructions of his principal where a third person with whom he deals is ignorant of his circumscribed authority or has no reason to believe he is exceeding it or violating the instructions of his principal." *Clark v. Burden*, 917 S.W.2d 574, 579 (Ky. 1996) (quoting *Am. Nat. Red Cross v. Brandeis Mach. & Supply Co.*, 286 Ky. 665 (1941)). Several pieces of evidence show that Superior had no reason to question the authority of Patrick to sign

---

respect to that issue, has the most significant relationship to the transaction and the parties under the principles stated in § 6.'" *Saleba v. Schrand*, 300 S.W.3d 177 (Ky. 2009) (quoting Restatement (Second) Conflict of Laws § 188(1) (1971)). Kentucky has the most significant relationship to the transaction and the parties. The work was performed in Kentucky, the plaintiffs are a Kentucky corporation, and the contracts were signed in Kentucky.

the invoices, and P & J introduces no evidence to the contrary.

P & J's continuous behavior of allowing its employees to sign the invoices shows Patrick's apparent authority. "Agency . . . can be established by circumstantial evidence including the acts and conduct of the parties such as the continuous course of conduct of the parties covering a number of successive transactions." *Hogan*, 785 S.W.2d at 267 (citation omitted). The evidence shows that Patrick and other employees signed these invoices on behalf of P & J over the course of 2004, 2005, and 2006. *See* R. Williams Dep. at 26-27; R. 20, Exs. G, J. Additionally, Richard and Pamela Williams, P & J executives, knew that Patrick and others signed the invoices. R. Williams Dep. at 22-23; P. Williams Dep. at 19. But they never instructed Patrick or others to stop signing the invoices.

> [W]here one with knowledge of material facts accepts or retains the benefits of the efforts or acts of another acting for him, he is deemed to have ratified the methods employed for he may not, though innocent himself, receive the benefits and at the same time disclaim responsibility for the measures by which they were acquired.

*Cox v. Venters*, 887 S.W.2d 563, 567 (Ky. Ct. App. 1994) (quoting *Stewart v. Mitchell's Adm'x*, 190 S.W.2d 660, 662 (Ky. 1945)); *see also Brooks v. Grams, Inc.*, 289 S.W.3d 208, 211 (Ky. Ct. App. 2008). Richard and Pamela Williams periodically reviewed the well files in which Pamela filed all the invoices. R. Williams Dep. at 40-41; P. Williams Dep. at 13. After receiving the benefit of its employees' work with Superior in the field, and never instructing its employees otherwise, P & J cannot now argue that its employees did not have the authority to sign invoices as they did on a regular basis.

Further, neither Richard nor Pamela Williams ever spoke with anyone at Superior about

7

a problem with the individuals endorsing the invoices. R. Williams Dep. at 36; P. Williams Dep. at 20. The Sixth Circuit applied standard agency principles (under Ohio law) to a similar conflict in *Siempelkamp*. 29 F.3d at 1098. In that case, the plaintiff's employee led the plaintiff's negotiations with the defendant for several years. *Id.* The plaintiff never informed the defendant that the agent lacked authority to bind the plaintiff. *Id.* The court found the plaintiff's "silence in this regard especially significant," because the plaintiff had received copies of the contracts signed by its employee, and knew the employee held himself out as authorized. *Id.* Here, although P & J was aware that Patrick signed the invoices, Richard Williams similarly remained silent about his employee's unauthorized activity. R. Williams Dep. at 32. Richard Williams, however, spoke with a representative of Superior sometime during 2004 or 2005, and expressed that he did not wish to consent to the warranty waiver, another condition on the backside of the invoice. *Id.* at 24-25. The parties did not memorialize this conversation in writing, and P & J continued to do business with Superior in the years that followed. *Id.* This evidence shows that P & J was aware of the terms and conditions, and how to raise potential contract issues with Superior. Yet P & J continued to allow its agents to sign the invoices and consent to the terms and conditions. Therefore, Patrick had apparent authority to sign the invoices for the September 2006 well work.

## II.     Enforceability of the Forum-selection Clause

Superior's main argument is that even if the forum-selection clause is a valid part of the contract, it is unenforceable because "the Plaintiff simply cannot afford to litigate this matter in

8

Pennsylvania as it is currently in very poor financial condition." R. 25 at 3. "The party opposing the forum-selection clause bears the burden of showing that the clause should not be enforced." *Wong v. Partygaming Ltd.*, 589 F.3d 821, 828 (6th Cir. 2009) (citing *Shell v. R.W. Sturge*, *Ltd.*, 55 F.3d 1227, 1229 (6th Cir. 1995)). Thus, P & J must prove that pursuing its claims in Pennsylvania would be financially prohibitive, and that financial convenience is reason enough to disregard a forum-selection clause. P & J fails to prove either, and thus, the forum-selection clause must be enforced.

In federal cases based on diversity jurisdiction, such as this one, the Court applies federal law to determine the enforceability of a forum-selection clause. *Id.* at 828.[2] Modern day courts recognize the ability of sophisticated parties to contract for their dispute forum and applicable law of choice so long as the provisions are reasonable and no fraud is involved. *See Shute*, 499 U.S. at 594-95. The evidence shows that P & J Resources is a sophisticated party. In 2007, the company had gross income of $8.7 million. R. Williams Dep. at 42-43. Although the company is currently suffering financially, it usually generates two to three million dollars in annual gross revenue. *Id.* at 43. P & J does not present a shred of evidence to suggest that it was coerced into signing an adhesion contract, or that it was not on equal bargaining footing with Superior. The logic behind the factors, therefore, cuts in favor of enforcing the clause.

---

[2] In light of *Wong*'s decision that federal rather than state law applies to the enforceability of a forum-selection clause, the P & J/Superior invoice's choice of law provision does not apply to this part of the analysis. In an abundance of caution, however, the Court considers whether the Third Circuit interprets this particular federal law differently than the Sixth Circuit. It does not. Both circuits rely on *Zapata*, 401 U.S. at 12 and the Restatement (Second) of the Conflict of Laws § 80. *Compare MoneyGram Payment Sys. Inc. v. Consorcio Oriental, S.A.*, 65 F. App'x 844, 847-48 (3d Cir. 2003) *with Sec. Watch*, 176 F.3d at 375.

When evaluating the enforceability of a forum-selection clause, courts look to the following factors: (1) whether the clause was "obtained by fraud, duress, the abuse of economic power or other unconscionable means," (2) whether the designated forum would not handle the suit "effectively or fairly," or (3) whether the forum would be so "seriously an inconvenient forum that to require a plaintiff to bring suit there would be unjust." *Sec. Watch*, 176 F.3d at 375 (quoting Restatement (Second) of the Conflict of Laws § 80 cmt. c). P & J does not frame its argument under the enforceability test, but to the extent it fits, it belongs under the third factor of unjust inconvenience.[3] P & J must "carry its heavy burden of showing" that a lawsuit in Pennsylvania would be "so manifestly and gravely inconvenient" that P & J would "be effectively deprived of a meaningful day in court." *Zapata*, 407 U.S. at 19; *cf. Preferred Capital, Inc. v. Assoc. in Urology*, 453 F.3d 718, 722-23 (6th Cir. 2006). As exhibited by the Supreme Court's strong language, "[t]his finding must be based on more than mere inconvenience of the party seeking to avoid the clause." *Wong,* 589 F.3d at 829.

Travel difficulties more severe than P & J's have not met the high standard for unjust inconvenience. In *Associates in Urology*, the Sixth Circuit held that the lack of convenience argument in that case "strain[ed] credulity" because the defendants, from Pennsylvania, argued it was too inconvenient to litigate in Ohio. 453 F.3d at 724. The Circuit explained that it was:

---

[3]To have a forum-selection clause disregarded under the first prong, the party must show that alleged fraud induced the party to agree to inclusion of the clause in the contract. *Preferred Capital, Inc. v. Assoc. in Urology*, 453 F.3d 718, 722 (6th Cir. 2006) (citing *Moses v. Bus. Card Express*, 929 F.2d 1131, 1138 (6th Cir. 1991)). Under the second factor, the plaintiff must show that the designated forum possesses a risk so grave that the litigants would be denied any remedy or treated unfairly. *Wong*, 589 F.3d at 829. P & J's arguments based on financial hardship clearly do not fit under either of these factors.

"difficult to comprehend Defendant's contention that the distance between Ohio and Pennsylvania would deprive Defendant of its day in court . . . while Defendant may have to travel a few hours, it cannot be said to be 'manifestly and gravely inconvenient' for Defendant to have to defend this case in Ohio." *Id.* Superior points out that Indiana County is only six hours from Pikeville, Kentucky. R. 27 at 6. Indeed, the Court takes judicial notice of the fact that the two locations are 360 miles apart. The two forums in *Associates in Urology* were approximately 415 miles apart, further than the distance between the two forums in this case. The Sixth Circuit has similarly rejected the inconvenience argument from parties that would have to travel as far as Gibraltar and Germany under a forum-selection clause. *Wong*, 589 F.3d at 829-30; *Siempelkamp*, 29 F.3d at 1099.

Even if financial instability met the unjust inconvenience test, P & J has not sufficiently proved that it would be financially difficult to litigate in Pennsylvania. P & J admits that in September 2009, it retained a lawyer in Indiana County, Pennsylvania, to defend a lawsuit that Superior filed there. R. 26 ¶ 43. When Superior proposed staying that matter until resolution of the forum-selection issues in this case, P & J's counsel refused and persisted in the Pennsylvania litigation. R. Williams Dep. at 48-49. Thus, not only can P & J afford to litigate in Indiana County, Pennsylvania, it already is litigating there. Further, P & J does not sufficiently explain its financial problems. The only shred of evidence it produced was Richard Williams's statement about P & J's adjusted and gross incomes for the years 2006 and 2007. *Id.* at 43-44, 47. P & J did not corroborate his testimony with any financial documents. In response, Superior points out that P & J paid over $156,000 in 2007 and $182,334 in 2008 for legal fees and other professional

11

expenses. *Id.* at 44. P & J does not even project the added cost of bringing this action in Pennsylvania state court rather than in this Court. Travel expenses, when P & J already has counsel and litigation ongoing in the alternate forum, do not gravely inconvenience P & J. Thus, the forum-selection clause to which the parties freely consented must be enforced.

## CONCLUSION

For the reasons explained above, the forum-selection clause is enforceable and this dispute must be heard in the Court of Common Pleas in Indiana County, Pennsylvania. When a party seeks to enforce a forum-selection clause through a properly brought motion to dismiss, the district court may enforce the forum-selection clause through dismissal. *See Sec. Watch*, 176 F.3d at 374-76. Here, the Court cannot transfer the action to its proper forum in state court. *See Setzer v. Natixis Real Estate Capital, Inc.*, 537 F. Supp. 2d 876, 879 (E.D. Ky. 2008). Thus, "the Court must dismiss this case without prejudice, with Plaintiffs having the opportunity to re-file in the state courts" of Pennsylvania. *Id.*

Accordingly, it is **ORDERED** as follows:

(1)   The defendant's motion for summary judgment, R. 20, is **GRANTED**;

(2)   The plaintiff's claims are **DISMISSED WITHOUT PREJUDICE**;

(3)   Judgment shall be entered contemporaneously with this memorandum opinion & order.

This the 5th day of April, 2010.



Signed By:
*Amul R. Thapar* AT
**United States District Judge**